**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230125-U

Order filed December 12, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0125 Circuit No. 17-CF-2289 |
| VINCENT L. WINTERS, | ) ) ) | Honorable Sarah-Marie Francis Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The court did not err in denying defendant's motion for substitution of judge.
        (2) The court properly imposed an extended-term sentence.

¶ 2     Defendant, Vincent L. Winters, appeals his conviction for failing to register as a sex

offender. Defendant argues that the Will County circuit court erred when it (1) denied

defendant's motion for substitution of judge; (2) failed to provide defendant an opportunity to

poll the jury; and (3) imposed an extended-term sentence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On March 7, 2018, the State charged defendant, by indictment, with failure to register as a sex offender (730 ILCS 150/6, 10(a) (West 2018)). The court permitted defendant to proceed *pro se*.

¶ 5          On September 23, 2021, defendant filed a "Motion for Substitution of Judge for Cause" pursuant to "725 ILCS 5/114-5(d) for a Substitution of Judge for Cause." In the motion, defendant asserted that the court "showed Bias and Prejudice intention towards the Defendant, when making a court ruling in Defendant's Bond Reduction hearing." Defendant continued that he "fear[ed] that He will not receive a Fair and Impartial Trial in this cause if He is Tried before Your Honor because of the Prejudice of Your Honor against the Defendant." Defendant asserted that he supported his motion "For Substitution of Judge for Cause (725 ILCS 5/114-5(d)" by affidavit, though no such affidavit is contained in the record. The motion concluded that defendant's request was made under "725 ILCS 5/114-5(d)" and was submitted and signed by defendant.

¶ 6          The court acknowledged defendant's motion, stating that defendant had "filed a substitution *** for cause." A different judge heard defendant's motion for substitution. Defendant indicated that Judge Sarah-Marie Francis Jones was related to an officer whom defendant alleged had battered him. Additionally, defendant asserted that Judge Jones made prejudicial statements against defendant. Following arguments, the court stated that it had conferred with Judge Jones and determined that there was "no blood relation between this officer and [the] Judge" and denied the motion. The court continued that defendant made "no allegations" to support a "substitution of judges for cause." The matter proceeded to a jury trial.

¶ 7        The evidence adduced at trial showed that, following a previous conviction for failing to register as a sex offender, defendant was required to report to the police department and register his address quarterly. Defendant read and signed documents acknowledging the requirements. Officer George Mantis registered defendant on May 8, and August 4, 2017. Defendant's next registry date was November 3, 2017. Preceding the November 3 date, defendant did not communicate with Mantis to schedule a registry appointment. Mantis and another officer attempted to contact defendant at two different addresses before defendant's November 3 registry date. Neither officer was successful in contacting defendant. On December 8, 2022, the jury found defendant guilty. On January 9, 2023, defendant filed a motion for a new trial arguing, *inter alia*, that the court generally erred in "substitution of judge issues." Following arguments, the court denied the motion.

¶ 8        Relevant to this appeal, defendant's presentence investigation report (PSI) showed convictions for aggravated domestic battery in 2001 and "Violation[s] of Sexual Offender Registration" in 2011 and 2017. Defendant's conviction in 2001 showed a conviction date of September 24, 2007. Defendant was originally sentenced to 14 years' imprisonment, but on September 24, 2007, his sentence was "[a]mended" to 5 years' imprisonment. Later, the PSI included conflicting information regarding defendant's 2001 aggravated domestic battery and the length of the sentence imposed. Defendant's 2011 conviction shows a conviction date of June 8, 2012. The court sentenced defendant to six years' imprisonment. Later, the PSI referred to June 8, 2012, as the sentencing date and indicated that defendant was discharged from prison on May 17, 2016.

¶ 9        On April 21, 2023, the matter proceeded to sentencing. During the hearing, the State asserted that defendant was extended-term eligible under section 5-5-3.2 of the Unified Code of

3

Corrections (730 ILCS 5/5-5-3.2 (West 2022)). The State relied on defendant's 2001 offense for aggravated domestic battery, a Class 2 felony, asserting that the court should calculate the 10-year period from "the judgment of conviction[s]" being August 18, 2004, and December 8, 2022. The State proffered that in the present case, defendant was "in custody" from June 6, 2021, to December 8, 2022. Defendant was "in custody" on the 2011 case from November 7, 2011, to May 17, 2016. Additionally, defendant was "in custody" for his 2001 conviction from August 18, 2004, until his release from prison on July 27, 2007. The State determined that 9.36 years had passed from defendant's 2001 conviction, falling within 10 years. The State asked the court to sentence defendant to an extended term. Defendant objected to the State's reliance on the 2001 conviction, reasoning the conviction was outside of the 10-year limitation to qualify defendant for an extended-term sentence. The court determined that defendant was extended-term eligible and sentenced him to 10 years' imprisonment with credit for time served in custody of 685 days. The court instructed defendant to file a motion to reconsider his sentence before appealing. Defendant did not file a motion to reconsider his sentence. Defendant appealed.

¶ 10                                    II. ANALYSIS

¶ 11        Defendant argues that the circuit court erred when it (1) denied his motion for substitution of judge; (2) failed to provide defendant an opportunity to poll the jury; and (3) improperly imposed an extended-term sentence.

¶ 12        At the outset, we note that defendant concedes that he forfeited his jury polling error claim and ultimately abandons the second-prong plain error argument. We accept defendant's concession that "an error in polling the jury is *** amenable to harmless error analysis and, therefore, is not structural error" under the second-prong plain error analysis. *People v. Jackson*, 2022 IL 127256, ¶ 49. Additionally, defendant does not assert any additional argument to avoid

4

forfeiture, and thus, we must honor his procedural default. *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010) (in the absence of an argument to avoid forfeiture, "we will generally honor the defendant's procedural default"). Accordingly, we will consider defendant's two remaining claims.

¶ 13                                    A. Motion to Substitute Judge

¶ 14        Defendant asserts that his motion for substitution of judge should have been considered under section 114-5(a), or substitution as a matter of right. In support, defendant relies on the absence of an affidavit in the record associated with his motion and the fact that he filed his motion within 10 days of being placed on the judge's docket.

¶ 15        Section 114-5 of the Code of Criminal Procedure of 1963 (Code) provides avenues for a defendant to move to substitute a judge, including: (1) as a matter of right and (2) for cause. 725 ILCS 5/114-5(a), (d) (West 2020). The Code states that a defendant seeking substitution as a matter of right must file a motion within 10 days of docketing and allege that the "judge is so prejudiced against him that he cannot receive a fair trial." *Id.* § 114-5(a). In contrast, "any defendant may move at any time for substitution of judge for cause, supported by affidavit." 725 ILCS 5/114-5(d) (West 2020). To be entitled to substitution of a judge for cause, the party seeking substitution must "establish not merely the possibility of prejudice, but also that prejudice tangibly exists." *People v. Mercado*, 244 Ill. App. 3d 1040, 1045 (1993). "[A]n allegation of prejudice of a judge, supported by facts upon which such alleged prejudice is based, is a showing of 'cause.' " *People v. Lagardo*, 82 Ill. App. 2d 119, 128 (1967). Pertaining to a motion for cause, "[a] defendant's right to a substitute judge is not absolute, but requires substantiation to ensure that the claim of prejudice is not frivolously made." *People v. Kluppelberg*, 257 Ill. App. 3d 516, 535 (1993). "A defendant who seeks a substitution of judge

5

for cause bears the burden of establishing actual prejudice." *People v. Klein*, 2015 IL App (3d) 130052, ¶ 85. "Prejudice is defined as animosity, hostility, ill will, or distrust towards this defendant." (Internal quotation marks omitted.) *Id.*

¶ 16    In the present case, defendant's substitution motion was titled as a motion for "Cause," and defendant cited section 114-5(d) in several locations.[1] See *cf. People v. Langford*, 246 Ill. App. 3d 460, 467 (1993). The body of defendant's motion contended that the court's comments and ruling in his bond reduction hearing, and the court's alleged familial relationship to an officer who battered defendant, established prejudice that would deny defendant a fair and impartial trial, consistent with the requirements of section 114-5(d). Thus, defendant's motion provided facts by which he sought to show that "prejudice tangibly exists." See *Mercado*, 244 Ill. App. 3d at 1045; *Lagardo*, 82 Ill. App. 2d at 128. Defendant's lack of affidavit did not create ambiguity regarding whether the motion should be considered under section 114-5(a) or section 114-5(d) as such failure simply compounded other insufficiencies in the motion. Moreover, defendant filing his motion within 10 days of placement on the docket does not indicate an intention to file a motion for substitution as of right because a motion for substitution for cause can be filed "at any time" and, therefore, was also properly filed within the 10 days of placement on the docket. 725 ILCS 5/114-5(d) (West 2020). Where both the title and contents of defendant's motion indicate that defendant intended to file a motion for substitution of judge for cause and defendant's allegations failed to establish any "tangibl[e]" prejudice, the motion was properly denied. *Mercado*, 244 Ill. App. 3d at 1045; see *People v. Kostos*, 21 Ill. 2d 451, 454

---

[1]To the extent that defendant relies on *People v. Smith*, 371 Ill. App. 3d 817, 821 (2007) (the appellate court found that when a motion is labeled incorrectly, the court should consider the motion's content to "determine[ ] its character, not the title or label asserted by the movant."), we find *Smith* unpersuasive to defendant's contention that the court should have considered his motion as a substitution as a matter of right, where the title of defendant's motion and citations within the motion consistently referred to a motion for substitution of judge for cause.

(1961); 725 ILCS 5/114-5(a) (West 2020); see *cf. People v. McDuffee*, 187 Ill. 2d 481, 488, 491 (1999).

¶ 17 In coming to this conclusion, we reject defendant's reliance on *Langford*, 246 Ill. App. 3d at 467. In *Langford*, the circuit court determined that defendant intended to file a motion for substitution of judge for cause where his motion listed two judges, omitted an affidavit, and lacked any other information regarding whether the motion was filed under section 114-5(a) or section 114-5(d). *Id.* at 461. At the hearing on the motion, defense counsel asserted that he intended to file the motion for substitution as a matter of right and had listed two judges by mistake. *Id.* at 462-63. The court refused to consider counsel's clarification and denied the motion. *Id.* at 463-64. On appeal, the court stated that "an ambiguous motion for substitution should not be summarily denied without allowing defendant to clarify his mistake, *if* he requests such an opportunity." (Emphasis added.) See *id.* at 465. The facts in defendant's case differ significantly where his motion specifically stated that he sought substitution for cause, defendant cited section 114-5(d) several times, and he never informed the court that he intended to file his motion under section 114-5(a) or request substitution as a matter of right. Defendant clings to the notion that his lack of affidavit, as in *Langford*, deemed his motion ambiguous. However, in *Langford* the lack of an affidavit was one of several factors contributing to the motion's ambiguity. Additionally, unlike *Langford*, defendant failed to assert any clarification that he mistakenly filed his motion under the wrong section. Such clarification would have been necessary where both the title and content of the motion unambiguously indicated that defendant intended to file his motion for substitution of judge for cause. *Supra* ¶ 16.

¶ 18 B. Extended-Term Sentence

¶ 19        Next, defendant argues that the court improperly imposed an extended-term sentence. Specifically, defendant contends that the record failed to affirmatively show that his periods of incarceration tolled the 10-year period, making him eligible for an extended-term sentence. Defendant concedes forfeiture in that he failed to preserve the issue by way of timely objection and postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). To avoid forfeiture, defendant asserts the court's sentencing error amounts to second-prong plain error. An unpreserved sentencing challenge may be reviewed under the second prong of the plain error doctrine if defendant can show "the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* at 545. The first step in the plain error doctrine is determining whether a "clear or obvious error" has occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 20        "[A] sentencing judge is given broad discretionary power to consider various sources and types of information so that he can make a sentencing determination within the parameters outlined by the legislature. [Citation.] Evidence is admissible in a sentencing hearing provided the proffered evidence is relevant and reliable." *People v. Williams*, 149 Ill. 2d 467, 493 (1992) The question of whether the circuit court has imposed an unauthorized sentence is a question of law and is subject to *de novo* review. *People v. Smith*, 345 Ill. App. 3d 179, 189 (2004).

¶ 21        A court may impose an extended-term sentence when " a defendant is convicted of any felony, after having been previously convicted in Illinois ***of [a] same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." 730 ILCS 5/5-5-3.2(b)(1) (West 2016). "[S]entencing dates for the prior and present offenses are the relevant dates for determining the 10-year period for the extended-term sentencing statute." *People v. Young*, 2018 IL App (3d) 160003, ¶ 11.

" '[T]ime spent in custody' means time spent in any custody as the result of a conviction." *People v. Robinson*, 89 Ill. 2d 469, 476 (1982). "[T]ime spent 'in custody' includes the time spent in pretrial detention on a charge that results in a conviction." *People v. Shaw-Sodaro*, 2023 IL App (4th) 220704, ¶ 59. In this case, defendant qualified for an extended-term sentence if the aggregate time that he spent out of custody between September 24, 2007, and April 21, 2023, did not exceed 10 years.[2]

¶ 22     Here, the total time elapsed between defendant's prior 2001 offense and the present offense is 5684 days or 15.56 years. To qualify for an extended-term sentence, defendant must have spent a minimum of 5.56 years in custody between September 24, 2007, and April 21, 2023. The record is clear that defendant was in custody for the present conviction from June 6, 2021, to his sentencing date of April 21, 2023, amounting to 685 days or 1.87 years. The record also shows that defendant was in custody for his 2011 conviction from November 7, 2011, to May 17, 2016, amounting to 1652 days or 4.52 years.[3] Defendant's aggregate time spent in custody for these two convictions is 6.39 years. Thus, the time elapsed, excluding 6.39 years, amounts to 9.17 years between convictions, placing his prior 2001 conviction within 10 years and satisfying the extended-term sentencing requirement.

---

[2]Defendant does not dispute that the 10-year calculation for his 2001 offense begins from the final sentencing order imposed on September 24, 2007. See *People v. Lieberman*, 332 Ill. App. 3d 193, 197 (2002) (the date of conviction is the date of the entry of a sentencing order. When a court vacates an original sentence, that sentence no longer exists. Thus, a defendant's eligibility for the imposition of an extended-term sentence must be determined from his "final sentence"); see also *People v. Lemons*, 191 Ill. 2d 155, 159-60 (2000). Defendant's contentions strictly challenge the tolled time due to the records ambiguity on his time spent in custody.

[3]The PSI referred to June 8, 2012, as both a conviction and sentencing date for defendant's 2011 offense. For purposes of this appeal, the relevant dates regarding defendant's 2011 conviction are the dates defendant spent in custody from November 7, 2011, to May 17, 2016. Given defendant's conviction and sentencing date, the timeframe the State proffered included pretrial custody. However, even calculating the time from June 8, 2012, the 1469 days or 4.02 years sufficiently tolled the 10-year period.

¶ 23    We reject defendant's assertion that the State's failure to provide "documentary evidence" of the dates of defendant's incarceration is similar to the PSI lacking information regarding defendant's released dates to determine time spent in custody. See *cf. Wilkins*, 343 Ill. App. 3d at 149, 151; *Young*, 2018 IL App (3d) 160003, ¶ 12; *People v. Beers*, 2021 IL App (5th) 200216-U, ¶ 17; *People v. Craig*, 2023 IL App (1st) 200311-U, ¶¶ 17-18, 31-32. In each of the cases defendant cites, the State did not present any evidence of defendant's actual time spent in custody and the PSI lacked sufficient information to support an extended-term sentence. In contrast, here, the State proffered defendant's in-custody and release dates for each offense. See *Williams*, 149 Ill. 2d at 490. Specifically, the proffered in-custody dates for defendant's present and 2011 convictions were "relevant and reliable" where there is no apparent contradiction or objection in the record. *Id.* Therefore, the court correctly considered this evidence in conjunction with the PSI when imposing defendant's extended-term sentence. To the extent that the State's proffer was unclear or contradicted the PSI, that unreliability is limited to the record pertaining to defendant's time spent in custody for his 2001 conviction. We need not delve into this issue where the aggregate time defendant spent in custody for the present and 2011 convictions sufficiently tolled the 10-year period, placing defendant's 2001 conviction within a proper timeframe to be eligible for extended-term sentencing.

¶ 24                                III. CONCLUSION

¶ 25    The judgment of the circuit court of Will County is affirmed.

¶ 26    Affirmed.

10